STATE OF TENNESSEE *vs.* JAMES C. ALLEN and others.

April Term, 1874.

ESCHEATED PROPERTY—JURISDICTION OF CHANCERY.—It is no sufficient ground of demurrer to a bill filed in this court by the state, under the act of 1866, 46, which gives the court jurisdiction of suits instituted by the state for the

recovery of escheated property, that the litigation involves the validity of a. will, and that the jurisdiction of the circuit court in such cases is exclusive.

WILL—PROBATE IN COMMON FORM—JURISDICTION.—Equity has jurisdiction to set aside the probate of a will in common form for fraud, or upon other equitable grounds, and may order an issue to test the validity of the will, and send it to the circuit court for trial.

*Jno. C. Gaut* and *Jas. M. Quarles*, for complainant.
*E. H. East* and *N. Baxter*, for defendant.

THE CHANCELLOR :—Bill and amended bill filed, under the act of May 26, 1866, ch. 46, to have the estate of one William P. Downs declared escheated to the state. The bill is based upon the ground that the deceased was the illegitimate son of one James P. Downs by one Polly Roper, while she lived in lawful wedlock with one William Roper, and that he died, never having been married, without issue, intestate, and leaving no relatives entitled by law to his estate.

The facts to be gathered from the bill are : That William P. Downs died about the 12th of July, 1866 ; that first Cartwright, and afterwards Roper, qualified as administrators of his estate ; that the children of one Smith, of the state of Ohio, who claimed to be the heirs and next of kin of Downs through the Downs, sent out J. C. Allen, the husband of one of them named Anna Henrietta, as their agent, who took possession of the property, and received the rents and profits ; that afterwards other parties named set up a claim to be the heirs and next of kin of the deceased through William Roper, and filed bills in this court, under which receivers were appointed ; that thus matters stood until about February, 1868, when, as the original bill alleges, " very unexpectedly and suspiciously a certain paper writing, purporting to be the last will of said William P. Downs, deceased, was mysteriously brought forth, and clandestinely and secretly probated in common form in the county court of Davidson county ;" " that said will is a forgery." The allegation of the amended bill on this point is : " That no such thing was heard of as that the said William P. Downs had made a will, until on or about the —— day of February,

1868, when a paper purporting to be his last will was mysteriously laid upon the table of one of the counsel of said Allen—but by whom put there complainant does not know—which was probated in common form in said county court, without notice to any one claiming an interest in said estate ; that said paper is spurious and forged, and not the last will and testament of said Downs.''

The complainant further charges that the instrument thus produced gives the whole estate to Anna Henrietta, the wife of J. C. Allen ; that when the other members of the Smith family heard of this probate they filed their petition in the county court to have an issue of *devisavit vel non* made up to try the validity of the will ; that Allen and wife resisted this application, upon the ground that the petitioners were not heirs or next of kin of deceased, and, therefore, not entitled to contest the probate. The father of the petitioners and Allen's wife was a cousin of the deceased, and the next of kin of William P. Downs, if he were the legitimate son of James P. Downs. But, on the trial of this preliminary case, Allen and wife undertook to show that, although James P. Downs was married to Polly Roper after she was divorced from her husband, and had a child or children by her, yet William P. Downs was born while she was still the wife of William Roper. Upon final hearing in the supreme court of the state, that court held that William P. Downs was the illegitimate son of James P. Downs, and that the petitioners had no right to contest the will. The court, in delivering the opinion in that case, took occasion to call the attention of the attorney general of the state to the law of escheats, and thereby to suggest that it might be his duty to assert the rights of the state to the property of the deceased, as escheated. This bill was filed accordingly.

The bill is filed against the Smiths and Ropers, the personal representative of William P. Downs, and all persons claiming, or entitled to claim, an interest in the estate, either by name, or by description as near as may be, and process has issued and publication been made accordingly.

The bill further alleges that those claiming the estate through the Ropers " have entered into a compromise with said Allen and wife, and have agreed upon a division of said estate between them."

To this bill Allen and wife have filed a general demurrer, to the effect that the act of 1866, under which the bill is filed, does not authorize this court to try the validity of a will that is forged, or otherwise invalid, and that the juris-diction of the circuit court is exclusive in such matters.

By the Code, § 2138, it is provided that " the estates, real and personal, of any person dying intestate within this state, without issue, and leaving within the United States no relatives entitled by the law of descents to his estate, shall go to the common school fund."

The 1st section of the act of 1866, ch. 46, makes it the duty of the district attorney, " in all cases in which he has a good right to believe an escheat has occurred in his district, to file a bill in the chancery court of the county wherein the land so escheated may lie, in the name of the state of Tennessee, and without security, to have the same declared escheated." By the 5th section of the act the same proceedings are authorized to be instituted against the personal representative and sureties to recover the sur-plus personalty.

The 2d section directs the district attorney to make par-ties defendants to said bill the personal representatives of the deceased, " and all other persons who are in possession, or in any manner or way claim any interest in or to such property," and directs that residents of the state shall be served with process, and non-residents made parties by pub-lication.

Section 4 provides for publication for " unknown heirs of the deceased," " and all persons claiming under him in any manner or way," and authorizes " all persons having an interest " in the estate to come into court and defend the same.

Section 6 provides for the disposition of the proceeds of

any recovery, and § 7 gives the right of appeal to the supreme court to "all the parties to said suit."

There can be no doubt that this act was intended to simplify the proceedings touching escheated estates, and to give this court complete jurisdiction of all suits brought in the name of the state to recover escheated property. The object was to confine the litigation, as much as possible, to a single suit, and for this purpose to clothe this court with plenary power to bind all parties.

The importance of the law and the wisdom of its provisions are well exemplified in the present case. Here is an estate, and quite a large one, to which there are several sets of claimants, and which has been in litigation for ten years. Upon the allegations of the bill, which are to be taken as true for the purposes of this discussion, it is clear that none of them have any right to the property in dispute. To require the state to institute separate suits against each set of claimants would greatly increase the expense, and lead to interminable complications. Nay, its right as against some of these parties might depend upon its first disposing of the claims of others. After it had once worked its tedious way through the courts to a final hearing, it would be necessary to begin anew with a fresh set of claimants. The estate would be exhausted in costs, and the common school fund receive no benefit.

I am clearly of opinion that the purpose of this law was to give the chancery court full jurisdiction, and to enable it to settle in one suit the rights of all claimants. It does not necessarily follow, however, that the chancellor shall dispose of every possible question which might arise between the state and the various claimants in the ordinary mode, nor at one hearing. It might very well be that an issue might be made up to try some hotly-contested fact turning upon the credibility of witnesses, or upon a large mass of conflicting evidence, and sent to a court of law for trial, or submitted to a jury to be empanelled in this court. So, if claimants to the estate stood in independent rights, as in

the case of insolvent estates or creditors' bills, there might be a hearing upon one branch of the case without waiting until the parties were ready in another branch. All that the act requires is that the suit in the chancery court should be the common nucleus of the litigation, and that the Chancellor should control it in all its details, and, finally, by decree, settle the rights of all parties.

In this view the demurrer is too broad. For, even if it be true that the act of 1866 was not intended to confer upon this court the trial of an issue of *devisavit vel non*, nor to deprive the circuit court of its exclusive jurisdiction over such issues, there is nothing to prevent the court, if it becomes necessary in the exercise of the jurisdiction conferred by the act, to make up the issue, and send it to the circuit court for trial. The court has, under the act, general jurisdiction of the state's claim to escheated estates. The mere fact that one of the claimants relies upon a forged will cannot oust the jurisdiction, although it may control the mode of its exercise.

It is well settled in this state that a proceeding to contest a will proved in common form is a new suit. It is, to use the language of the supreme court, in *Wynne* v. *Spiers*, 7 Humph. 407, " a distinct matter of preliminary investigation, constituting the *corpus* of a legal contestation proper to be settled finally before the issue of *devisavit vel non* be tried." And see *Cornwell* v. *Cornwell*, 11 Humph. 485 ; *Hodges* v. *Buchanan*, 8 Humph. 186. Ordinarily this proceeding is commenced in the county court, because a contest may sometimes be made when the will is offered for probate, and because, under the early rulings, the application afterwards was to set aside the probate in common form, and allow an issue. But the later cases are to the effect that the county court has no power, after the term at which the probate in common form was made, to set the probate aside. *Byrn* v. *Fleming*, 3 Head, 658, 662 ; *Roberts* v. *Stewart*, 2 Swan, 162, 165. That power, if it exists

anywhere, exists in this court. And if it may, upon sufficient cause, set aside a probate, it may order an issue.

That this court has jurisdiction to set aside the probate of a will in common form is too clear for argument. For it may set aside a probate in solemn form if obtained by fraud. Fraud vitiates the most solemn acts, and enables this court to annul the adjudications of any court. In this case the allegations of the bill, already quoted, are sufficient, if true, to authorize this court to set aside the probate in question. The probating in common form, " secretly and clandestinely," of a " spurious and forged " instrument purporting to be a will, or even of an instrument " mysteriously and suspiciously " brought forth under the circumstances mentioned in the bill, would be a fraud vitiating the act, and cognizable in this court.

Of course I must not be understood as saying that these facts are true as alleged. I am only bound to treat them as true in ruling upon this demurrer. So treating them, the demurrer is too broad and must be overruled.

It may not be improper for me to add that if it becomes necessary, as I think it will, to make up an issue of *devisavit vel non* in this case, I am of opinion, at present, that it will be my duty to send it to the circuit court for trial; because the circuit court is by statute, sustained by the uniform current of decision, the proper court for the probate of a will in solemn form, because its machinery is more perfect for the proper trial of such an issue than the machinery of this court, and because its decision is binding on all the world.

The defendants, Allen and wife, are undoubtedly entitled to contest the right of the state to make such an issue, but if the allegations of the bill be true in reference to the proceedings in the contest with the Smiths, and the decision of the supreme court therein, they are probably estopped to dispute the facts upon which that right is based. If they choose to make no opposition to the state's right, I will order the issue at once, and fix the time within which it

shall be tried, unless the trial should be continued by the circuit court, upon good cause shown. But if the delay in the trial should be caused by the state, and in my opinion unnecessarily protracted, I should feel at liberty to discharge the receivers appointed at the instance of the state, and turn the property over to the other claimants.

NOTE.—Allen and wife having acceded to the suggestion contained in the last paragraph of the opinion, an issue of *devisavit vel non* was made up and transmitted to the circuit court for trial, and there tried, the finding being in favor of the will.